**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Civil Case No. 25-cv-6793 (DC) (RT) |
| CRANE ENTERPRISES, LLC, | Chapter 11 |
| Debtor. | No. 25-10405 (DSJ) |
| CRANE ENTERPRISES, LLC, | |
| Plaintiff, | Adv. Pro. No. 25-01040 (DSJ) |
| -vs- | |
| MICHAEL E. CRANE, DANIEL M. CRANE, JOHN DOE AND JANE DOE (Fictitious Persons) | |
| Defendants. | |

**MEMORANDUM OF LAW OF MOVANTS MICHAEL E. CRANE AND DANIEL M. CRANE SUPPORT OF MOTION FOR AN EMERGENCY STAY OF TURNOVER/EVICTION ORDERS PENDING APPEAL**

*Respectfully submitted by:*

**MCSHAPIRO LAW GROUP PC**
Mitchell C. Shapiro, Esq. (MS-9019*)*
Three Grace Avenue, Suite 100
Great Neck, New York 11021
Tel: (917) 446-3628
Email: MCS@MCShapiroLaw.com

**LAW ADVOCATES LLC**
Douglas A. Goldstein, Esq. (DG-5891)
 236 Millbrook Ave, Ste 3R
Randolph, New Jersey 07869
Tel: (973) 845-6526
Email: DGoldstein@Advocates.Esq

*Attorneys for Defendants-Appellants Michael E. Crane and Daniel M. Crane*

## <u>TABLE OF CONTENTS</u>

*Page*

TABLE OF AUTHORITIES ....................................................................................... ii

I. PRELIMINARY STATEMENT ............................................................................ 2

II. JURISDICTION ................................................................................................... 6

III. LEGAL STANDARD FOR STAY PENDING APPEAL .................................. 6

IV. ARGUMENT ...................................................................................................... 7

    1.       MOVANTS ARE LIKELY TO SUCCEED ON THE MERITS ................................. 7

           A.      The Lease Is Enforceable and Not Void. ......................................... 9

           B.      In its SJ Opinion and SJ Order, the Bankruptcy Court Erroneously Concluded Daniel Is Bound By the 2024 L-T Order Against Michael and Therefore Can Be Evicted From the Apt. .................................. 10

                  1.      New York RPAPL § 749(1) and CPLR 1024 Together Prohibit Enforcement of the 2024 L-T Order Against Daniel .......................... 10

                  2.      Even Absent Statutory Protections, Daniel Is Not Collaterally Estopped From Litigating His Rights Under the Lease ...................... 14

           C.      Eviction Order Authorizing Self Help Lockout and Changing of Locks Is Contrary to Law ......................................................................... 18

    2.       MOVANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY ............. 19

    3.       WHETHER A STAY WILL SUBSTANTIALLY INJURE OTHER INTERESTED PARTIES ................................................................................ 20

    4.       WHERE THE PUBLIC INTEREST LIES ................................................ 22

    5.       NO BOND SHOULD BE REQUIRED ..................................................... 24

VII. CONCLUSION ............................................................................................... 24

TABLE OF AUTHORITIES

CASES:

Anonymous v. Dobbs Ferry Union Free Sch. Dist., 797 N.Y.S.2d 120 (App. Div. 2nd
Dept. 2005) ..............................................................................................................16

B&S Duo Realty LLC v. Gazali, 81 Misc. 3d 1221(A), 2023 NY Slip Op 51423(U),
200 N.Y.S.3d 761 (Queens Cty Civ. Ct. 2023)...............................................14, 20

Beras v. Carvlin, 313 F. App'x 353 (2d Cir. 2008) ...............................................17

Braschi v. Stahl Assocs. Co., 74 N.Y.2d 201 ........................................................23

Bronx Park Phase III Pres., LLC v. Tunkara, 65 Misc. 3d 1223(A), 119 N.Y.S.3d 393
(Civ Ct, Bronx Co 2019)..........................................................................................14

Brusco v. Braun, 84 N.Y.2d 674 (1994) ................................................................11

Buechel v. Bain, 97 N.Y.2d 295 (2001) ...........................................................16, 17

Burrowes v. Goodman, 50 F.2d 92 (2d Cir. 1931) ................................................24

Carrington v. Lamonica (In re Carrington), 698 F. Supp. 3d 659 (S.D.N.Y. 2023)............7, 20

Cla-Mil E. Holding Corp. v. Medallion Funding Corp., 6 N.Y.3d 375 (2006) ................19, 24

Credit One Bank, N.A. v. Anderson (In re Anderson), 560 B.R. 84 (S.D.N.Y. 2016) .............8

D & N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449 (1984) .................10

Facey v. Johnson, 49 Misc. 3d 1136 (Sup. Ct. Kings County 2015)................19, 24

Flushing Corner Assocs., Inc. v. Kang Uncle Inc., 2025 NYLJ LEXIS 2531, Index
No. 514544/2021 (Queens Cty Civ. Ct. 2025)........................................................14

Gold v. Schuster, 264 A.D.2d 547 (1ˢᵗ Dept 1999).................................................19

Graves v. Hasan, 2014 NY Slip Op 24361, 46 Misc. 3d 731, 996 N.Y.S.2d 504 (Civ.
Ct., Kings Co 2014) .................................................................................................10

Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047 (9th Cir. 2005)................17, 18

Jq1 Assocs. v. Schwartz & Assocs., No. 614355/19, 2020 N.Y. Misc. LEXIS 15598
(Nassau Cty Sup. Ct. Sep. 24, 2020)......................................................................16

Kahn v. Kahn, 43 N.Y.2d 203 (1977).....................................................................12

Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449 (1985) ...............................................16

LaRouche v. Kezer, 20 F.3d 68 (2d Cir. 1994)........................................................8

Leroy v. Hume, 563 F. Supp. 3d 22 (E.D.N.Y. 2021) .............................................8

Lewis v. Mfrs. Nat'l Bank, 364 U.S. 603 (1961) ....................................................24

Mut. Ins. Co. v. Jones, 445 N.Y.S.2d 820 (App. Div. 2nd Dept. 1981) ................................16

N.Y.C. Hous. Auth. Managed by Seth Low Houses v. Ingram, No. LT-326154-23111, 2025 N.Y. Misc. LEXIS 3603 (Civ. Ct. May 1, 2025) ............................................13

Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin., 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012) ....................................................7

Nken v. Holder, 556 U.S. 418, 434 (2009) ............................................7

Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC, 474 B.R. 76, 80 (S.D.N.Y. 2012) ....................................................7

Sol De Ibiza, LLC v. Panjo Realty, Inc., 911 N.Y.S.2d 567, 569 (1st Dept App. Term Sept. 22, 2010) ....................................................19, 24

Tucker v. Lorieo, 291 A.D.2d 261, 738 N.Y.S.2d 33 (1st Dept 2002) ............................14, 20

Union Ave. Apts. v. Yarborough, 85 Misc. 3d 923, 2024 NY Slip Op 24311, 223 N.Y.S.3d 901 (Mt Vernon City Ct 2024) ....................................................13, 14, 21

W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157 (1990) ....................................................10

Wiener v. Specific Pharms., Inc., 298 N.Y. 346 (1949) ....................................................24

STATUTES:

11 U.S.C. § 542(a) ....................................................9, 20

28 U.S.C. §§ 158 and 1334 ....................................................7

28 U.S.C. § 157(b)(2) ....................................................7

28 U.S.C. § 158(a)(1) ....................................................7

28 U.S.C. § 959 ....................................................24

28 U.S.C. §§ 1408 ....................................................7

CPLR § 1024 ....................................................passim

CPLR § 3215 ....................................................12

NY RPAPL § 290 ....................................................10

NY RPAPL § 290(1) ....................................................10, 11

NY RPAPL § 291 ....................................................10, 11, 14, 20

NY RPAPL § 749 ...................................................................................................21

NY RPAPL § 749-a ..........................................................................................19, 24

RPAPL §§ 749(1) and (2)............................................................................13, 14, 15

**MCSHAPIRO LAW GROUP PC**
Mitchell C. Shapiro, Esq. (MS-9019*)*
Three Grace Avenue, Suite 100
Great Neck, New York 11021
Tel: (917) 446-3628
Email: MCS@MCShapiroLaw.com

**LAW ADVOCATES LLC**
Douglas A. Goldstein, Esq. (DG-5891)
 236 Millbrook Ave, Ste 3R
Randolph, New Jersey 07869
Tel: (973) 845-6526
Email: DGoldstein@Advocates.Esq

*Attorneys for Defendants-Appellants Michael E. Crane and Daniel M. Crane*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CRANE ENTERPRISES, LLC,<br><br>               Debtor. | Civil Case No. 25-cv-6793 (DC) (RT)<br><br>Chapter 11<br><br>No. 25-10405 (DSJ) |
| CRANE ENTERPRISES, LLC,<br><br>               Plaintiff,<br><br>        -vs-<br><br>MICHAEL E. CRANE, DANIEL M. CRANE, JOHN DOE AND JANE DOE (Fictitious Persons)<br><br>               Defendants. | Adv. Pro. No. 25-01040 (DSJ) |

**MEMORANDUM OF LAW OF MOVANTS MICHAEL E. CRANE AND DANIEL M. CRANE SUPPORT OF MOTION FOR AN EMERGENCY STAY OF TURNOVER/EVICTION ORDERS PENDING APPEAL**

Defendants-Appellants Michael E. Crane ("Michael") and Daniel M. Crane ("Daniel"; together, "Movants"), by their undersigned counsel herein, respectfully submit this memorandum of law in support of their instant application for an emergency stay pending appeal of the Bankruptcy Court's three recent orders, dated July 30, 2025, August 20, 2025 and August 22, 2025, which respectively, (1) Granted Plaintiff-Debtor Crane Enterprises LLC ("CE" or "Debtor")

Summary Judgment against them (<u>Adv. Proc. ("ECF No.") 11</u>, the 07/30/2025 "SJ Order"), based

on the 07/29/2025 opinion (<u>ECF No. 10</u>, the "SJ Opinion") (giving collateral estoppel effect to a

lower state court opinion that overlooked the Movants' lifetime lease and gave Plaintiff turnover

and possession of, the Movants' home); (2) Denied the Movants' Motion Seeking To Alter, Amend

or Grant Relief from the SJ Order (pursuant to Bankruptcy Rules 9023 or 9024), or alternatively

for a Stay Pending the Appeal Of The SJ Order under Rule 8007 (<u>ECF No. 21</u>, 08/20/2025

"Reconsideration/Stay Order"); and (3) Ordered the Eviction of the Movants by September 5,

2025, by order dated August 22, 2025 (<u>ECF No. 23</u>, the "Eviction Order") (collectively, the

"Bankruptcy Orders"), pursuant to Federal Rule of Bankruptcy Procedure 8007, and for such

further and additional relief as the Court deems just (including staying the briefing of the appeal

herein until after the conclusion of the Movants' ongoing appeal of the order of possession and

eviction granted by the NYS District Court Nassau County (the "NYDCourt") to which the

Bankruptcy Court gave collateral estoppel effect in the SJ Order. In support of this Motion,

Movants respectfully represent:

## I. <u>PRELIMINARY STATEMENT</u>

The Bankruptcy Court erred when it granted summary judgment to CE, a New York limited

liability company with one asset, shares that it owns in Xander Corp. ("Xander"), a cooperative

real estate entity. *See* Schedule A/B (Main Case, ECF No. 1); ECF No. 6, SJ Motion, Exh. B. The

Debtor is a tenant under a proprietary lease agreement with Xander for a leasehold interest in the

coop Apt. known as 360 Shore Road, Apt 8L, Long Beach NY 11561 (the "Apt."). *See* ECF No.

6, SJ Motion, Exhibit C.

Michael and his adult son Daniel, have a lifetime lease to the Apt. (the "Lease"), which is

their current and future home (and had previously been the summer and holiday residence of

Michael's grandmother/Daniel's great grandmother, Mollie Crane).[1] Michael, his mother Joyce Crane and his aunt, Rhoda Crane, were the members of CE since 2010. In 2014, the same year that Joyce signed the Lease, she and Rhoda used their own funds to purchase a different cooperative Apt. in Fort Lee NJ for Michael's only sibling, his sister Jacqueline. M.CraneDec.#4.

As detailed in the Background Section and in the accompanying Declarations, following the deaths of Rhoda and Joyce a few months apart in 2020, a dispute arose between Jacqueline and Michael, which led to claims regarding various properties and Michael's right to own and manage CE and the Apt. Litigations ensued in New York state court, and Jacqueline sought to have administrators/trustees appointed over Rhoda and Joyce's New Jersey estate and trust. Michael objected to the appointment of administrators, believing that their appointment would be costly and counterproductive. Jacqueline made scurrilous and unfounded attacks upon Michael in the New Jersey estate proceedings, and the Court appointed an Administrator with authority over the assets of CE (the "2022 NJ Order", ECF No. 6, SJ Motion Exh. A). That order, while striking the proposed language that improperly accused Michael of fraud, also provides that "the Administrator is directed to file all necessary applications to remove Michael Crane from any manager, member … position with [CE] LLC .. ." *Id.*, ¶22. The Administrator never did any such thing, and Michael is still registered as the Managing Member of CE. The Administrator also admitted never having

---

[1] *See* ECF No. 6, SJ Motion, Exhibit F (Lease) and the accompanying Declaration of Michael E. Crane, executed under penalties of perjury on August 25, 2025 and submitted herewith in support of the instant application for a stay pending appeal (the "M.CraneDecl#4"), which consolidates for the Court's convenience the facts and procedural history contained in the seven declarations previously submitted to the Bankruptcy Court by Michael and Daniel (ECF No. 7-2 ["D.CraneDecl#1"], dated June 12, 2025), ECF No., 7-3, ["M.CraneDecl#1", dated June 12, 2025], ECF No., 12-1 ["M.CraneDecl#2", dated August 13, 2025] and Exhibit 1 annexed thereto [PostTrial Memorandum from L-T Action], ECF No. 12-2 ["D.CraneDecl#2", dated August 13, 2025], and ECF No., 19-1 ["M.CraneDecl#3", dated August 19, 2025].

served Michael with the domesticated 2022 NJ Order after filing it in a New York court in 2024. *Id.* The Administrator never commenced an action in New York surrogate's court or sought to have letters testamentary issued as required for a foreign administrator to attach New York property of an estate. *Id.*

Instead, the Administrator filed a landlord tenant proceeding in the NYDCourt in the name of CE and sought to evict named defendant Michael and "John Doe Defendants" (the "L-T Action"). Michael raised the Lease and all of the foregoing issues in defense and rebutted the Debtor's argument that the lease needed to be recorded, noting that there was no requirement for a lifetime lease, and proffering evidence that the Nassau County Clerk would not even accept a private lease for recording purposes. The NYDCourt noted that it had limited jurisdiction and could not rule on authority over an LLC or the other procedural issues, seemingly ignored the Lease (without voiding or acknowledging it in an order), and issued a one page handwritten order granting possession to the Debtor and evicting Michael (the "L-T Order", dated November 18, 2025, notice of entry of which was purportedly served on December 5, 2025). Michael timely filed a Notice of Appeal of what he believed to be an interlocutory order on December 20, 2025 and believed, based on the statement of the Appellate Term clerk that an appeal could not be pursued until final judgment was entered. The Debtor never sought to have the final judgment of possession or warrant of eviction entered or to commence eviction proceedings. Instead, likely recognizing the difficulty that it would have on appeal in the Appellate Term, the Debtor filed the CE Bankruptcy on March 4, 2025 (listing only bankruptcy counsel and Xander, who was owed a small sum since the Debtor had instructed Xander to stop accepting coop maintenance payments from Movants), and then immediately filed this Adversary Proceeding on March 5, 2025.

The Bankruptcy Court granted CE summary judgment, erroneously giving collateral

estoppel effect to the L-T Order, which was the subject of an ongoing (yet stayed, by the automatic stay in bankruptcy) pending appeal to the Appellate Term, including a challenge to the plaintiff's representative's authority to even bring the L-T Action, and imposing it on *both* Movants, despite that the Debtor had neglected to name Daniel as a party in the L-T Action (even after the Lease had been introduced) and Daniel – who was studying abroad at the time -- had no notice of, or involvement in the L-T Action. The Bankruptcy Court then heard and denied the Movants' motion for reconsideration or vacatur of the SJ Order, or alternatively a stay pending appeal, and granted the Plaintiff-Debtor's motion for an order of eviction. After those motions were filed, the Court granted relief from the automatic stay in bankruptcy of the appeal of the L-T Order to the NYS Appellate Term, but did not shorten the 14-day stay of effectiveness (which does not expire until August 28, 2025) and simultaneously scheduled the other motions to be argued on August 20, 2025. On August 20, 2025,  the Bankruptcy Court then denied Defendants' motion in its entirety and ordered an eviction to take place on September 5, 2025.

The Bankruptcy Court erred in its findings that the Defendants had been dilatory in pursuing their state court appellate rights, erred in accepting the argument that there were meaningful creditors or that any legitimate debtor or creditors would be prejudiced by a stay pending appeal. The only meaningful creditors to be served by the immediate eviction and sale of the Apt. (in a rising Long Beach NY real estate market) are going to be counsel for the Debtor (who asserted a $350,000 claim as a creditor due to another proceeding involving a different debtor entity) and the Administrator, who has placed a $600,000 claim against the estate for services rendered. The Movants, on the other hand, face the loss of their only remaining home, the last asset of their family's estate, and the extinguishing of their appellate rights in an apparent violation of their due process rights.   This entire bankruptcy proceeding is a devious end run around

Defendants' state court appellate rights and due process.

Movants also contend that this Eviction Order erred by violating New York State law, which prohibits self-help lockouts and evictions. As discussed in further detail below, the facts support a stay pending appeal and will not unfairly prejudice CE or any meaningful creditors.

## II. <u>JURISDICTION</u>

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 158 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. 28 U.S.C. § 158(a)(1) grants district court's jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts. The Orders appealed are final. Legal conclusions of the bankruptcy court are reviewed de novo. *Secs. Inv. Protection Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 474 B.R. 76, 80 (S.D.N.Y. 2012) (citations omitted).

## III. <u>LEGAL STANDARD FOR STAY PENDING APPEAL</u>

"To determine whether a stay pending appeal is appropriate, a court considers 'four well-established factors.' [citation omitted.] They are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." <u>See Carrington v. Lamonica (In re Carrington)</u>, 698 F. Supp. 3d 659 (S.D.N.Y. 2023). *Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012) (citations omitted). "'The first two factors . . . are the most critical,' and these factors have typically been evaluated on a sliding scale, so that a strong showing that the applicant is likely to succeed excuses a weaker showing of irreparable injury." *Id* (quoting *Nken v. Holder*, *556 U.S. 418, 434 (2009)*).

This Court is also authorized to grant a temporary stay to allow an application for a stay pending appeal to the Second Circuit Court of appeals. *See In re Albicocco*, No. 06-CV-3409, 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006) (denying stay pending appeal, while exercising discretion to grant temporary stay to allow application for stay pending appeal to the Second Circuit). Accordingly, should this Court choose to deny the instant application for stay pending appeal, Movants respectfully request a reasonable stay to permit time to prepare and file an application for stay to the Second Circuit Court of Appeals.

## IV. ARGUMENT

### 1. MOVANTS ARE LIKELY TO SUCCEED ON THE MERITS.

"The 'substantial possibility of success' test is considered an intermediate level between 'possible' and 'probable' and is 'intended to eliminate frivolous appeals.'" *Credit One Bank, N.A. v. Anderson (In re Anderson)*, 560 B.R. 84, 90 (S.D.N.Y. 2016). Movants have met this standard. Likewise,"[w]hen seeking a stay pending appeal, a movant 'need not always show a 'probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay.'" Leroy v. Hume, 563 F. Supp. 3d 22, 27 (E.D.N.Y. 2021), quoting LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994). A serious legal question is involved. Movants have made their showing.

The Bankruptcy Court's entry of the Stay Relief Decision and its anticipated entry of an order granting relief from the automatic stay together will permit Daniel to intervene in the L-T Action and for Movants to prosecute the appeal of the 2024 L-T Order in an expeditious manner (beginning on or after August 28, 2025, when the Stay Relief is effective.

In the appeal of the 2024 L-T Order and SJ Order, the Movants will argue that, as set forth above,

because the term of the Lease does not exceed three years, the Lease is not void under RPAPL 291. As a result, the Movants hold a valid possessory interest in the Apt. under the Lease and, therefore, are likely to succeed on the merits of the appeal of the 2024 L-T Order.

Similarly, because the Movants are likely to succeed on the merits of the appeal of the 2024 L-T Order, they are likely to succeed on the merits of an appeal of the SJ Order. See ECF 10, SJ Opinion, p. 10-11 (discussing the application of 11 U.S.C. § 542(a)). Also, the Movants will argue in the appeal of the L-T Action that the NYDCourt should not have proceeded with the turnover proceedings or granted relief before considering Michael's argument concerning his status as managing member of the Debtor and the failure of Mr. Repetto to (i) remove Michael as a member or manager of the Debtor, and (ii) comply with the statutory requirements for a foreign administrator seeking to administer a probate estate's property—the probate estate's interest in the Debtor—located in New York. This issue was preserved for appeal in the L-T Action (see ECF No. 12-1 at 9 of 74) and not addressed in the L-T Order.

In addition, the Movants will argue that the representatives of the probate estates that claim ownership in the Debtor, who were appointed by a New Jersey court, must obtain ancillary letters from a New York court appointing them as ancillary fiduciaries before they could bring a summary proceeding. Here, Messrs. Repetto and Reiser acted solely on behalf of the estates which claim ownership of the Debtor. They did not do so. See ECF No. 12-1, Exh. 1 at p. 10 of 24. In addition to the question of ownership, the Debtor should not have been permitted to proceed with the L-T Action, or receive an award of possession, without obtaining the requisite authority from the Surrogate Court under the New York Estates, Powers and Trusts Law. Accordingly, the Movants are likely to succeed on the merits of their appeal of the L-T Action.

**A.    The Lease Is Enforceable and Not Void.**

Under RPAPL § 290(1), "[t]he term 'real property,' as used in this article, includes lands, tenements and hereditaments and chattels real, except a lease for a term not exceeding three years." RPAPL § 291 provides that conveyances of real property that are not recorded are void as to subsequent purchasers. The Debtor has contended that, because the Lease has a lifetime term and was not recorded, it is void under RPAPL § 291. A statement of reasons did not accompany the 2024 L-T Order, but it appears that the is believed that the NYDCourt erroneously accepted the Debtor's misapplication of those statutes or overlooked the Lease.

The three-year rule under RPAPL § 290 is analogous to the one-year rule under the Statute of Frauds. The New York Court of Appeals, in discussing the requirement of a writing under the Statute of Frauds for contracts that have a term of at least one year, explained that "the courts have generally been reluctant to give too broad an interpretation to this provision of the Statute and instead have limited it to those contracts only which by their very terms have absolutely no possibility in fact and law of full performance within one year." D & N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 483 (1984).

Moreover, "[i]t is well settled that 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'" W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 163 (1990). The term of a lease is established in the text of the written lease agreement. Graves v. Hasan, 2014 NY Slip Op 24361, 46 Misc. 3d 731, 996 N.Y.S.2d 504 (Civ. Ct., Kings Co 2014) (the court emphasized that the term of the lease was governed by the written agreement).

The duration of the Movants' possession of the Apt. could not and did not define or alter the *term* of the Lease, which was fixed at the time of its execution and defined by the four corners

of the lease document. The Lease, by its terms, in law and in fact, could have been fully performed and expired in less than three years, such as if Movants passed away less than three years after its execution. On its face, the term of the Lease did not exceed three years. This point may have confused the NYDCourt and led to confusion regarding a recording requirement. Moreover, the Nassau County Clerk's office indicated that, even if the term exceeded three years, they would not have recorded the Lease because they do not record private leases. See M.CraneDecl#3, ¶11; see also ECF No. 12-1 at Exh. C, letter from Nassau County Clerk (confirming that "we do not record private leases").

Because the Movants' possessory interest under the Lease based on coop shares is not an interest in real property under RPAPL § 290(1), it is not subject to RPAPL § 291 and NOT void.

**B. In its SJ Opinion and SJ Order, the Bankruptcy Court Erroneously Concluded Daniel Is Bound By the 2024 L-T Order Against Michael and Therefore Can Be Evicted From the Apt.**

***1. New York RPAPL § 749(1) and CPLR 1024 Together Prohibit Enforcement of the 2024 L-T Order Against Daniel.***

As recognized by the Bankruptcy Court, New York law governs the issue of whether the 2024 L-T Order collaterally estops Daniel from litigating the validity of the Lease. See ECF No. 10, SJ Opinion, p. 13.

Article 7 of the New York Real Property Actions and Proceedings Law ("RPAPL") "sets forth the jurisdictional and procedural requirements for summary proceedings to recover possession of real property." Brusco v. Braun, 84 N.Y.2d 674, 679 (1994) (holding that Civil Court judge lacked discretion to grant further or separate relief outside the bounds of the RPAPL). The court explained:

> [RPAPL] Article 7 represents the Legislature's attempt to balance the rights of landlords and tenants to provide for expeditious and fair procedures for the determination of disputes involving the possession of real property [citation omitted]. … These safeguards ensure adequate notice and judicial oversight of tenants' rights. *The statute does not authorize the Judges to fashion additional, individualized protections upsetting the legislative scheme.* [Emphasis added.]

Braun, 84 N.Y.2d at 681-82. In Braun, the Civil Court judge contended that CPLR 3215 authorized him to engage in fact-finding. The Court of Appeals overruled him, explaining:

> [W]hile the broader CPLR 3215(b) [factfinding] has been abrogated by the more specific RPAPL 732 [citing CPLR 101] (CPLR "shall govern the procedure in civil judicial proceedings … except where the procedure is regulated by inconsistent statute"); [and citing McKinney's Cons Laws of NY, Book 1, Statutes § 397] ("A special statute which is in conflict with a general act covering the same subject matter controls the case and repeals the general statute insofar as the special act applies").

Braun, 84 N.Y.2d at 681. The decision in Braun clarifies that a court may not award relief inconsistent with the statutory scheme of the RPAPL, and that the RPAPL supersedes inconsistent case law and equitable doctrines. Likewise, it is commonly understood that legislative enactments override judicially created equitable doctrines when the statute, like the RPAPL, is clear and comprehensive. See, e.g., Kahn v. Kahn, 43 N.Y.2d 203, 207-09 (1977) (Court of Appeals recognized the primacy of statutory rules over decisional law and equitable doctrines regarding real property rights). A court may not apply the equitable doctrine of collateral estoppel where doing so is inconsistent with statutory law.

Relevant to this matter, RPAPL 749(1) provides:

> Upon rendering a final judgment for petitioner, the court shall issue a warrant … commanding the officer to remove *all persons named in the proceeding*, provided upon a showing of good cause, the court may issue a stay of re-letting or renovation of the premises for a reasonable period of time.

Further, CPLR 1024 provides:

> …If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

In Union Ave. Apt.s v. Yarborough, 85 Misc. 3d 923, 223 N.Y.S.3d 901 (Mt Vernon City Ct 2024), the court applied RPAPL 749(1) and CPLR 1024 and determined "because the property manager knew that Yarborough resided at the premises, had petitioner named her as "Jane Doe," she "would have had a meritorious argument based on misuse of CPLR 1024."' Yarborough, 223 N.Y.S.3d at 926. The court further explained:

> the failure to properly include them in summary proceedings will bar the petitioner from evicting them pursuant to any warrant the petitioner obtains against the primary tenant.

Yarborough, 223 N.Y.S.3d at 926. The court further explained:

> The Bankruptcy Court could not find any appellate court authority post passage of the HSTPA that held a family member occupant, with no independent possessory interest, need not be named in a summary proceeding [and . . .] the significant changes to the RPAPL post the Appellate Term's decision *require that all lawful occupants be named in a summary proceeding*, including family members.

See N.Y.C. Hous. Auth. Managed by Seth Low Houses v. Ingram, No. LT-326154-23111, 2025 N.Y. Misc. LEXIS 3603, at *3 (Civ. Ct. May 1, 2025) ("Lastly, and more alarming to the Court, is … evicting occupants who are not named in the petition; not named on the judgment; and not named on the warrant *in direct contravention of RPAPL §§749(1)* and (2)" (emphasis added)). Hence, a co-tenant is a necessary party to an eviction action and cannot be evicted unless named in the petition. Further, RPAPL 749(1) and CPLR 1024 together protect occupants and co-tenants who are not named in an eviction petition and supersede inconsistent equitable doctrines.

In <u>Bronx Park Phase III Pres., LLC v. Tunkara</u>, 65 Misc. 3d 1223(A), 119 N.Y.S.3d 393 (Civ Ct, Bronx Co 2019), unnamed occupant Sidibe was not named in the proceeding, even as a "Jane Doe." As in <u>Yarborough</u>, the court observed:

> [I]f Sidibe had been named as 'Jane Doe,' she would have had a meritorious argument based on misuse of CPLR 1024 ("Unnamed Parties"). [citing <u>Tucker v. Lorieo</u>, 291 A.D.2d 261, 261, 738 N.Y.S.2d 33 (1st Dept 2002)] ("To use the John Doe method of CPLR 1024 it must be shown that plaintiff made genuine effort(s) to ascertain the defendants' identities . . . .").] . . . to accurately name and serve her in order to accord her due process of law … its inaction cannot now be excused by allowing it to amend the caption to name an individual who was denied due process as a result of a blatant lack of care. … amendment of the judgment to add Sidibe as a respondent will not lie. …Contrary to Petitioner's contention, it will suffer no "great prejudice" by being required to properly obtain jurisdiction over the occupants of the subject premises.

The <u>Tunkara</u> court ordered, among other things, that:

> [T]he Petitioner shall instruct its Marshal that while it is entitled to take legal possession of the premises from Fatoumata Tunkara, it has no such right as against Hawa Sidibe. Petitioner or its attorney shall contact Sidibe upon issuance of the warrant of eviction and prior to any eviction to ensure that Sidibe is present at the time legal possession is taken from Tunkara. She is to be given a key immediately when the locks are changed."

In <u>B&S Duo Realty LLC v. Gazali</u>, 81 Misc. 3d 1221(A), 2023 NY Slip Op 51423(U), 200 N.Y.S.3d 761 (Queens Cty Civ. Ct. 2023), an occupant not named as a party successfully moved for dismissal based on petitioner's misuse of CPLR 1024. In <u>Flushing Corner Assocs., Inc. v. Kang Uncle Inc.</u>, 2025 NYLJ LEXIS 2531 at 7, Index No. 514544/2021 (Queens Cty Civ. Ct. 2025), Court rejected the *res judicata* option for an undertenant/non-party and dismissed judgment and eviction warrant under RPAPL 749(1)  for lack of "service of the notice of petition and petition".

The Debtor did not name Daniel as a party in its petition or at any time during the pendency of the L-T Action, despite having notice of Daniel's co-tenancy and occupancy. As a co-tenant under the Lease, Daniel was a necessary party. The protections of RPAPL 749(1) and CPLR 1024

together shield Daniel from being collaterally estopped from litigating the validity of the Lease (to the extent that collateral estoppel otherwise might apply, which is disputed as addressed below), and shield him from being evicted by a court officer.

In support of its SJ Opinion, the Bankruptcy Court found: (i) "Defendants have had an ample opportunity to seek relief from the eviction Judgment … both before and after the bankruptcy case began" (SJ Opinion, p. 14); (ii) as of the petition date and even now, the Cranes are subject to the Judgment" (SJ Opinion, p. 17); and (iii) "the Cranes … continue to occupy the Apt. from which they were ordered evicted…." See SJ Opinion, p. 17-18. Because RPAPL 749(1) prohibited enforcement of the 2024 L-T Order against Daniel, there was no order, judgment or warrant from which to seek relief by Daniel, and no order evicting him. Moreover, the Bankruptcy Court's finding that "[t]he Cranes' conduct … smacks of gamesmanship and a concerted effort to exploit every viable means of frustrating Debtor's lawful effort to regain control of its own property," lacks evidentiary support in the record, and does not reflect the facts when viewed in a light most favorable to the non-moving parties to the SJ Motion. Because New York law prohibits the enforcement of the 2024 L-T Order against Daniel, the SJ Order, by adopting the 2024 L-T Order and granting the Debtor possession and turnover of the Apt., exceeds the bounds of New York law and should be vacated or amended accordingly. New York

### 2. *Even Absent Statutory Protections, Daniel Is Not Collaterally Estopped From Litigating His Rights Under the Lease.*

*In arguendo*, even if the statutory protections of RPAPL 749(1) and CPLR 1024 did not supersede the doctrine of collateral estoppel, which the above discussion refutes, the 2024 L-T Order does not collaterally estop Daniel from litigating the validity of the Lease. In the SJ Opinion, the Bankruptcy Court recognized that "the [SJ] Motion turns on … whether the [2024 L-T Order]

binds Daniel M. Crane despite the fact that he was not a named party to that proceeding."

As explained in Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455-56 (1985):

> There are now but two requirements which must be satisfied before the doctrine [of collateral estoppel] is invoked. First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination [citations omitted.] The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination

"Collateral estoppel is a fundamentally equitable doctrine which is not to be rigidly or mechanically applied." Jq1 Assocs. v. Schwartz & Assocs., No. 614355/19, 2020 N.Y. Misc. LEXIS 15598 (Nassau Cty Sup. Ct. Sep. 24, 2020). "Doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." Buechel v. Bain, 97 N.Y.2d 295, 305 (2001).

In the SJ Opinion, the Bankruptcy Court quotes Anonymous v. Dobbs Ferry Union Free Sch. Dist., 797 N.Y.S.2d 120, 121 (App. Div. 2nd Dept. 2005), in support of the proposition that, "[t]he rule in New York is that the 'pendency of an appeal does not prevent the use of the challenged judgment as the basis of' collateral estoppel." The Dobbs Ferry court misquoted Amica Mut. Ins. Co. v. Jones, 445 N.Y.S.2d 820 (App. Div. 2nd Dept. 1981), in which the court explained: "The rule in New York … is that the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping *a party to that judgment* in a second proceeding." (Emphasis added.) Because the decision in Dobbs Ferry did not impose collateral estoppel against a non-party to a prior judgment, that court's unexplained omission of the phrase, "a party to that judgment," in dicta unintentionally and improperly expanded its scope to a non-party. These cases each involved a party collaterally estopped by a decision in a prior action to

which that same party was a party. An expanded reading of the law—to impose collateral estoppel against a non-party to a judgment on appeal—is not warranted, particularly where "[d]oubts should be resolved against imposing" the doctrine. See Buechel, 97 N.Y.2d at 305.

Next, the Court cites Beras v. Carvlin, 313 F. App'x 353, 355 (2d Cir. 2008) in support of the proposition that co-tenants of property are in privity to each other and one is collaterally estopped from litigating a claim resolved by a judgment against another. See SJ Opinion at p. 19. Beras is an inapposite case where a plaintiff sued an attorney, his former law firm, and co-counsel who had represented the plaintiff together. The Second Circuit affirmed the dismissal of the lawsuit based on res judicata from the prior dismissal of the plaintiff's malpractice claim against the attorney. Beras, 313 F. App'x at 355. The Beras court did not impose collateral estoppel *against*, but instead, *for the benefit of*, parties in privity, which eliminated any notion of unfairness, or denial of a full and fair opportunity for them to litigate an issue. And the plaintiff could not argue that preclusion was unfair having himself appeared and litigated the prior dismissed claim. Moreover, the Second Circuit recognized that the parties in privity were not simply parties on the same side of a contract, like co-tenants on a lease, but actively served together as plaintiff's co-counsel. Beras, 313 F. App'x at 355. Beras is distinguishable. The Bankruptcy Court's quote from Beras in turn quotes the Ninth Circuit's decision in Headwaters Inc. v. United States Forest Serv., 399 F.3d 1047 (9th Cir. 2005), a case where the court explained the "privity" analysis:

> Privity, traditionally, arose from a limited number of legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest, chiefly: co-owners and co-tenants of property....
>
> However, "the term 'privity' is now used to describe various relationships between litigants that would not have come within the traditional definition of that term." [citing Richards v. Jefferson County, 517 U.S. 793, 798 (1989)]. Richards cited two sources for this statement: the Restatement (Second) of Judgments and Martin v. Wilks, 490 U.S. 755, 104 L. Ed. 2d

835, 109 S. Ct. 2180 (1989). The former adds to the traditional privity categories circumstances in which "a person who is not a party to an action . . . is represented by a party," including trustees and beneficiaries, other fiduciary relationships and consensual or legal representational relationships, and "the representative of a class of persons similarly situated, designated as such with the approval of the court, of which the person is a member." . . . "A nonparty can be bound by the litigation choices made by his virtual representative," id. at 929, only if certain criteria are met: "[A] close relationship, substantial participation, and tactical maneuvering all support a finding of virtual representation; identity of interests and adequate representation are necessary to such a finding." Id. at 930. . . .As this summary indicates, *parallel legal interests alone, identical or otherwise, are not sufficient to establish privity, or to bind a plaintiff to a decision reached in another case involving another plaintiff.* [Emphasis added.]

Headwaters, 399 F.3d at 1052-54 (reversed the lower court's *sua sponte* dismissal predicated on res judicata after finding insufficient factual inquiry and holding parallel interests insufficient). The Debtor did not even reference the issue of collateral estoppel in its SJ Motion. Viewing the facts in a light most favorable to the non-moving parties to the SJ Motion, their status as co-tenants does not establish that Michael controlled the L-T Action litigation for Daniel's benefit, or that Daniel "engaged in "substantial participation, … tactical maneuvering … and [had] adequate representation" or a full and fair opportunity to litigate the validity of the Lease.

There is no cited New York case law that would hold that Michael and Daniel, based on their co-tenancy relationship, are in privity for purposes of collateral estoppel. Moreover,

In the SJ Opinion, the Court found that "Defendants did not even attempt to meet [the burden of establishing that it was not afforded a full and fair opportunity to litigate the issue previously]." See SJ Opinion at 21. First, the Debtor did not identify the doctrine of collateral estoppel in the SJ Motion. Second, in the SJ Objection, Movants did argue, in part: "Daniel Crane was never served in the state court proceedings, was never permitted to present his defense, and cannot be legally evicted from the premises." See ECF No. 7, SJ Objection, p. 4, ¶10; see also p.

5, ¶13 ("Daniel Crane was never served with any eviction papers or notices. He retains all of his rights under New York Law and cannot be evicted."); see also p. 8, ¶21 ("[D]aniel Crane was not named and has not been served in the [ ] action. … Daniel Crane is entitled to due process and to present his defenses."). Based on the foregoing, the 2024 L-T Order does not collaterally estop Daniel from litigating the validity of the Lease.

> **C.    Eviction Order Authorizing Self Help Lockout and Changing of Locks Is Contrary to Law**

Self-help is only available under New York law, if ever, under narrowly circumscribed exceptions, none of which are appliable or claimed here. See Sol De Ibiza, LLC v. Panjo Realty, Inc., 911 N.Y.S.2d 567, 569 (1st Dept App. Term Sept. 22, 2010) (commercial landlord may utilize self-help where, inter alia, the subject lease specifically reserves the landlord's right to reenter and prior to reentry, landlord serves upon tenant a valid rent demand, reentry was effected peaceably, and tenant was in fact in default in its obligation to pay rent). In Facey v Johnson, 49 Misc. 3d 1136 (Sup. Ct. Kings County 2015), the court emphasized that landlords in New York are prohibited from engaging in self-help evictions. Instead, landlords must follow due process, and even after obtaining a warrant, the eviction process must involve a marshal or sheriff, who assumes responsibility for the tenant's personal possessions during the eviction process. State eviction laws, which generally require the involvement of a marshal or sheriff to execute a warrant of eviction Gold v. Schuster, 264 A.D.2d 547 (1st Dept 1999); Cla-Mil E. Holding Corp. v. Medallion Funding Corp., 6 N.Y.3d 375 (2006), NY CLS RPAPL § 749-a. The role of marshals in New York City is specifically regulated, and they act under the direction of the court to ensure lawful enforcement of eviction orders. Id. Movants have a reasonable probability of reversing the decision to authorize a self-help lock out. At an absolute minimum, this Court should stay those provisions of the

Bankruptcy Orders that purport to authorize the buyer to effectuate a self-help lock out.

Based on the foregoing, Movants are likely to show that the Bankruptcy Court erred when it awarded possession to the Debtor under 11 U.S.C. § 542(a).

**2.    <u>MOVANTS WILL SUFFER IRREPARABLE HARM ABSENT A STAY.</u>**

"Harm must be 'actual and imminent,' [citation omitted], 'not ... remote or speculative'" <u>Carrington</u>, 698 F. Supp. 3d at 662. Movants will suffer substantial, immediate harm if this Court does not stay the enforcement of the Bankruptcy Orders. The Bankruptcy Court lifted the automatic stay to permit the Movants to pursue the appeal of the 2024 L-T Order, but the appeal will become moot if they are evicted from the Apt.. Moreover, the Apt. is the Movants' primary and sole residence. <u>See</u> M.CraneDecl#2, ¶8. Movants have resided in the Apt. for many years. <u>See</u> M.CraneDecl#2, ¶4.

Further, the entry of the 2024 L-T Order, despite the Debtor's failure to name Daniel in the L-T Action, deprived him of his fundamental right to due process and caused him irreparable harm. In New York landlord-tenant practice, the landlord-petitioner *must* name a co-tenant, or demonstrate that it has conducted due diligence to ascertain the identity of the co-tenant before it pleads a "John Doe" or "Jane Doe" as did the Debtor, the failure of which is fatal to an eviction proceeding and requires its dismissal. <u>See</u> <u>Tucker v. Lorieo</u>, 291 A.D.2d 261, 261, 738 N.Y.S.2d 33 (1st Dept 2002) ("To use the John Doe method of CPLR 1024 it must be shown that plaintiff made genuine effort(s) to ascertain the defendants' identities…."); <u>see also</u> <u>B&S Duo Realty LLC</u>, 81 Misc. 3d 1221(A), 2023 NY Slip Op 51423(U), 200 N.Y.S.3d 761 (Queens Cty Civ. Ct. 2023) (the court granted the unnamed occupant's motion to dismiss based on the petitioner's misuse of CPLR 1024—the petitioner did not present evidence that it diligently attempted to learn the identity of the John Doe occupant before commencing the proceeding); <u>Union Ave. Apt.s v.</u>

<u>Yarborough</u>, 85 Misc. 3d 923, 2024 NY Slip Op 24311, 223 N.Y.S.3d 901 (Mt Vernon City Ct 2024) (finding that "the significant changes to [NY RPAPL §749] post the Appellate Term's decision require that all lawful occupants be named in a summary proceeding, including family members").

The Debtor's admitted inability to protect the assets of the bankruptcy estate further weigh in favor of the stay pending appeal because the Movants, if permitted to remain in the Apt., will maintain and protect the sole asset of the bankruptcy estate. The Debtor's self-imposed insolvency and inability to protect its assets have created an exigency that could lead to a rushed sale of the Debtor's primary asset, to the detriment of the bankruptcy estate.

In deciding the Stay Relief Motion, the Bankruptcy Court found that the balance of harms weighed in Michael's favor because without relief, he would be held to the outcome of the state court ruling. <u>See</u> Main Case ECF No. 31, Stay Relief Decision, p. 3. The Bankruptcy Court recognized that lifting the stay would allow Michael (and Daniel) to pursue a final state court determination concerning their right to reside in the Apt.. <u>See</u> <u>Id.</u>, p. 9. The appellate relief that the Movants will seek in state court would be meaningless if they could not retain possession of the Apt. pending appeal. The Bankruptcy Court based its award of possession to the Debtor on the relief granted in the 2024 L-T Order. If the Movants prevail on their appeal of the 2024 L-T Order but are evicted by the Debtor based on the SJ Order, which relied on the 2024 L-T Order, the Movants will suffer a substantial injustice.

**3.    <u>WHETHER A STAY WILL SUBSTANTIALLY INJURE OTHER INTERESTED PARTIES</u>**

This factor weighs in favor of granting a stay pending appeal. Based on the Debtor's representation that "the Debtor does not have any funds to satisfy any of its obligations" (<u>see</u> SJ Reply, ¶37, citing Declaration of David Repetto attached thereto as Exhibit I), the Debtor has

admitted that it cannot meet its basic administrative responsibilities in this Chapter 11 bankruptcy case, which calls into question the Debtor's continued possession of the bankruptcy estate. The Debtor's bankruptcy schedules and filings reflect that it has no business operations and no known cash flow. Movants are prepared to protect the Apt. for the duration of the appeal, including payment of its carry costs such as insurance, cooperative fees and assessments, and other maintenance costs associated with it. Movants have procured proof of insurance and, but for Xander's refusal to accept their payments due to the Debtor's inexplicable instruction, which the Debtor presumably can reverse, Movants are ready, willing and able to pay the Debtor's post-petition cooperative fees. Movants' willingness to fund these expenses offers the only possibility for the Debtor to avoid administrative insolvency. As a result, a stay will not injure, but instead protect, the sole asset of the bankruptcy estate.

In the Stay Relief Decision, the Bankruptcy Court concluded that lifting the automatic stay, to permit the Movants to pursue the appeal of the 2024 L-T Order, "would not unduly interfere with the Debtor's bankruptcy estate…." (Main Case ECF No. 31, Stay Relief Decision at p. 3), the "interests of other creditors will not be unduly prejudiced as there are few creditors, consisting of the obligee on the common charges associated with the Property (presumably the cooperative residential corporation) and two law firms who are owed money in connection with prior litigation (seventh factor)" Id. at 10 While the Bankruptcy Court considered that it had granted relief to the Debtor for turnover of the Apt., it found that the balance of harms still weighed in Michael's favor because "without relief, he will be held to the outcome of a state-court ruling despite his stated disagreement with that ruling and what but for the automatic stay would be his ongoing right to appeal that judgment" Id. at p. 3. Thus, there will be no harm to anyone, other than a delay in payment to the debtor's lawyers.

4.    <u>WHERE THE PUBLIC INTEREST LIES</u>

Eviction from one's home is "one of the harshest decrees known to the law." <u>See</u> <u>Braschi v. Stahl Assocs. Co.</u>, 74 N.Y.2d 201, 214-15 (1989, Bellacosa, J., concurring) (the court, in addressing the competing purposes of rent control laws, found flexibility in the law to prevent displacement of a nontraditional family member). The New York Legislature, through its enactment of RPAPL Article 7, has attempted "to balance the rights of landlords and tenants to provide for expeditious and fair procedures for the determination of disputes involving the possession of real property [citation omitted]. The statute attempts to protect a landlord's right to recover premises occupied by a nonpaying tenant promptly but also to ensure that tenants are not unjustly evicted from their homes." <u>See Braun</u>, 84 N.Y.2d at 681-82. Further, the Legislature has set a goal of "preventing dislocation and preserving family units which might otherwise be broken apart upon eviction" for "[f]amily members, whether or not related by blood, or law who have always treated the Apt. as their family home…." <u>Braschi</u>, 74 N.Y.2d at 212.

The Debtor does not contend that the Movants failed to pay rent or breached a lease, but instead, asserts incorrectly that the Lease is void. The public interest favors giving the Movants a full opportunity to pursue their appellate remedies *before* they can be evicted from the Apt., particularly considering that the Movants are prepared to protect the bankruptcy estate's interest in the Apt.. The Movants have made a strong showing that they will prevail on the merits of the appeal of the 2024 L-T Order and, therefore, should be permitted to remain in the Apt. until their appellate remedies have been exhausted.

New York also has a strong public interest in seeing that evictions take place in full compliance with the statutory protections against permitting self-help lockouts and evictions. As detailed above, self-help is only available under New York law, if ever, under narrowly

circumscribed exceptions, none of which are appliable or claimed here. <u>Sol De Ibiza, LLC</u>, 911 N.Y.S.2d at 569; <u>Facey v Johnson</u>, 49 Misc. 3d at 1136 ("even after obtaining a warrant, the eviction process must involve a marshal or sheriff, who assumes responsibility for the tenant's personal possessions during the eviction process); <u>Gold</u>, 264 A.D.2d at 547 ; <u>Cla-Mil E. Holding Corp. v. Medallion Funding Corp.,</u> 6 N.Y.3d at 375 (marshals … act under the direction of the court to ensure lawful enforcement of eviction orders); NY CLS RPAPL § 749-a. <u>Id</u>.

It almost goes without saying that foreign fiduciaries lack the authority to put a New York company into bankruptcy and bring an Adversary Proceeding against the managing member of that company who is also a 50% beneficiary of the Probate Estate.   "It is settled that as a general rule a foreign administrator may not sue in the courts of this State without first obtaining ancillary letters." <u>Wiener v. Specific Pharms., Inc.,</u> 298 N.Y. 346, 348 (1949); <u>Burrowes v. Goodman,</u> 50 F.2d 92, 93 (2d Cir. 1931) (same).  Also, the public interest favors adherence to New York law requiring a foreign administrator to seek ancillary letters before attempting to administer domestic assets, including an interest in a domestic business entity. In addition, New York has a public interest in protecting the rights of members of a domestic limited liability company from foreign default judgments under the internal affairs doctrine and the New York Limited Liability Company Act. Last, there is a public interest in not having single purpose entities choose to file for bankruptcy for the sole purpose of making an end run around the due process and appellate rights of litigants in state courts. See *Lewis v. Mfrs. Nat'l Bank,* 364 U.S. 603, 608-09 (1961) (expressing its opposition to "creating a windfall merely by reason of the happenstance of bankruptcy"); <u>.In re Friarton Estates Corp.,</u> 65 B.R. 586 (Bankr. S.D.N.Y. 1986) ("28 U.S.C. § 959 …  obligates [the] … debtor in possession to work under the same requirements of law with respect to the operation of its real property that it would be if it were not a debtor in possession. … [citation omitted] 'the

provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions.'")..

## 5. <u>NO BOND SHOULD BE REQUIRED</u>

A bond is discretionary when a stay pending appeal is sought pursuant to Federal Rule of Bankruptcy Procedure 8007. It is anticipated, based on the Debtor's arguments during the August 20, 2025 proceedings before the court, that the Debtor will attempt to insulate the Bankruptcy Orders from appeal by arguing that Movants should post a bond. No bond should be required in this case as there is no money judgment against Movants and little to no harm would be suffered by a brief stay. *See In re Adelphia Communications Corp.,* 361 B.R. 337 (S.D.N.Y. 2007) (no bond required for stay of chapter 11 confirmation order); *In re Fiesta Inn & Suites, LP*, 2009 Bankr. LEXIS 4176, at *9 (Bankr. W.D. Tex. Dec. 21, 2009) (bonds are less likely to be required in cases not involving money judgments); *In re Sphere Holding Corp.*, 162 B.R. 639, 644 (E.D.N.Y. 1994) ("This case does not require a bond (nor have any interested parties asked for one) because little or no damage will be incurred as a result of the stay.").

This is not a case where Movants are attempting to delay paying money on a money judgment that they owe, the typical paradigm in which a supersedeas bond might be required. This is a case where Movants are being evicted on extremely short notice, and where the Movant has volunteered to impose conditions on the stay pending appeal that will provide superior protection to the Debtor's sole asset, maintaining the property insurance and paying the cooperative maintenance charges so as to avoid the risk of a foreclosure for failure to pay maintenance.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, which may be supplemented upon oral argument of this motion,

Michael E. Crane and Daniel M. Crane respectfully request the entry of an order, in the form attached hereto as Exhibit A, pursuant to Bankruptcy Rule 8007, granting a stay of the Bankruptcy Orders pending the appeals of the 2024 L-T Order and SJ Order, to permit the Movants to remain in possession of the Apt. while they pursue their appellate remedies through the State Court Appellate process, and in the interests of avoiding duplicative appeals, staying the briefing of the appeal of the Bankruptcy Orders until after the conclusion of the Movants' appeal of the Order granted by the New York State NYDCourt in the Landlord Tenant Proceeding to which the Bankruptcy Court gave collateral estoppel effect in the SJ Order.

Dated:  Great Neck, New York
        August 25, 2025

Respectfully Submitted:

**MCSHAPIRO LAW GROUP PC**                    **LAW ADVOCATES LLC**

By:  */ s / Mitchell C. Shapiro*        .      **By** */ s / Douglas A. Goldstein*
Mitchell C. Shapiro (MS-9019)                  Douglas A. Goldstein, Esq. (DG-5891)
Three Grace Avenue, Suite 100                  236 Millbrook Ave, Ste 3R
Great Neck, New York 11201                     Randolph, New Jersey 07869
(T) 917.446.3628                               Tel: (973) 845-6526
(E) MCS@MCShapiroLaw.com                        Email: DGoldstein@Advocates.Esq

*Attorneys for Defendants-Appellants Michael E. Crane and Daniel M. Crane*